UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

OPAL CONSTRUCTION, CORP.,

     *Plaintiff*,

     -against-                      Case No.: 2:18-cv-05422-SJF-GRB

THE TOWN OF BABYLON,

     *Defendant*.

_____

---

**MEMORANDUM IN SUPPORT OF
PETITION FOR TEMPORARY RESTRAINING ORDER
AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR MONETARY DAMAGES**

---

**STOKES WAGNER, ALC**
Paul Wagner
Hayden Pace (permanent admission pending)
Anne-Marie Mizel (*pro hac vice* to be submitted)
903 Hanshaw Road
Ithaca, NY 14850
(607) 257-5165 (Telephone)
(607) 257-6293 (Facsimile)
pwagner@stokeswagner.com
hpace@stokeswagner.com
amizel@stokeswagner.com

Attorneys for the Plaintiff,
Opal Construction, Corp.

# TABLE OF AUTHORITIES

**Cases**

*Alcala v. Burns,*
  545 F.2d 1101 (8th Cir. 1986) ................................................................ 10

*Associated Builders and Contractors* v. *Perry,*
  817 F. Supp. 49, 54 (E.D. Mich. 1992) .................................................... 8

*Associated Builders and Contractors, Inc. v City of Jersey City, New Jersey,*
  2017 WL 2616889, at *2 (D.N.J. June 15, 2017) ................................. 5, 8

*Bain v. Town of Argyle,*
  2006 WL 2516497, at *2 (N.D.N.Y. Aug. 28, 2006) ............................... 9

*Bizzarro* v. *Miranda,*
  394 F.3d 82, 88 (2d Cir. 2005) ............................................................... 10

*Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.,*
  507 U.S. 218, 226-227 (1993) ................................................................. 4

*Broidrick v. Lindsay,*
  48 A.D.2d 639, 639-640, 368 N.Y.S.2d 212, 213-214 (1975),
  *aff'd,* 39 N.Y.2d 641, 350 N.E.2d 595 (1976) ......................................... 7

*Danese v. Knox,*
  821 F. Supp. 185, 190 (S.D.N.Y. 1993) ................................................... 9

*Golden State Tr. Corp. v. City of Los Angeles,*
  493 U.S. 103, 112-113 (1989) ................................................................. 4

*Ligon v. City of New York,*
  910 F. Supp. 2d 517, 519-520 (S.D.N.Y. 2012) .................................... 12

*Livadas v. Bradshaw,*
  512 U.S. 107, 133-134 (1994) ................................................................. 4

*Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cty.,*
  431 F.3d 277, 278 (7th Cir. 2005) ........................................................... 6

*Metropolitan Taxicab Bd. of Trade v. City of NY.,*
  615 F.3d 152, 158 (2d Cir. 2010) ....................................................... 3, 12

*Norton v. Town of Islip,*
　239 F. Supp. 2d 264, 269 (E.D.N.Y. 2003) ........................................................................ 9

*Simard* v. *Bd of Educ.,*
　473 F.2d 988 (2d Cir. 1973) ................................................................................................. 9

*Sioux City Bridge Co. Dakota Cty.,*
　260 U.S. 441, 445 (1923) .................................................................................................... 10

*SmithKline Beecham Consumer Healthcare, LP v. Watson Pharm. Inc.,*
　211 F.3d 21, 24 (2d Cir. 2000) ............................................................................................ 2

*Sunday Lake Iron Co. v. Wakefield Tp.,*
　247 U.S. 350, 352-353 (1918) ............................................................................................. 10

*Time Warner Cable of New York City v. Bloomberg, L.P.,*
　118 F.3d 917, 929 (2d Cir. 1997) .................................................................................... 3, 11

*Transcontrol Corp. v. Metro. Transp. Auth. of the State of N.Y.,*
　1987 WL 12090, at *4 (S.D.N.Y. June 2, 1987) ................................................................ 10

*Van-Go Transp. Co. v. New York City Bd. of Educ.,*
　53 F. Supp. 2d 278, 288-289 (E.D.N.Y. 1999) .................................................................... 5

*Village of Willowbrook v. Olech,*
　528 U.S. 562, 564 (2000) ............................................................................................... 10, 11

*Whitaker v. Bd of Higher Ed of City of N.Y.,*
　461 F. Supp. 99, 103 (E.D.N.Y. 1978) ............................................................................... 9

*Wisconsin Dep't of Indus., Labor & Human Relations v. Gould Inc.,*
　475 U.S. 282, 289 (1986) ..................................................................................................... 5

*Young-Flynn v. Wright,*
　2007 WL 241332 at *7 (S.D.N.Y. Jan. 26, 2007) ........................................................... 2, 3

**Statutes**

29 U.S.C. § 1002(1) ..................................................................................................................... 8

29 U.S.C. § 1144 .......................................................................................................................... 8

42 U.S.C. § 1983 ..................................................................................................................... 3, 4

**Other Authorities**

Babylon's ordinance, § 89-13.1 ........................................................................................... 1

**Regulations**

New York Labor Law § 816-b............................................................................................ 1, 6, 7, 8

New York Labor Law § 815……………………………………………………………... 7

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................................. 1

**BACKGROUND** ................................................................................................ 1

**ARGUMENT** .................................................................................................... 2

    A.  Injunctive Relief is Appropriate Upon a Showing of Irreparable Harm and
Likelihood of Success on the Merits ............................................................... 2

    B.  The Ordinance is Plainly Preempted by the National Labor Relations Act and
Cannot Be Lawfully Enforced ....................................................................... 4

    C.  The Ordinance Exceeds the Defendant's Authority Under New York State Law .............. 6

    D.  The Ordinance is Also Preempted by ERISA .................................................... 8

    E.  The Application of the Ordinance to the Plaintiff Violates Its Civil Rights ....................... 9

    F.  The Public Interest Favors a Temporary Restraining Order and Preliminary
Injunction to Prevent the Enforcement of the Ordinance While the Court Considers
Permanent Relief ...................................................................................... 11

**CONCLUSION** ............................................................................................... 13

## PRELIMINARY STATEMENT

Babylon Ordinance §89-13.1 seeks to exclude Plaintiff and others similarly situated from bidding on or engaging in construction and related work within the Defendant's town limits by restricting such work to businesses that maintain certain specified types of apprenticeship programs.  The Ordinance as applied is preempted by both the National Labor Relations Act ("NLRA") and the Employee Retirement Income Security Act ("ERISA), overreaches the Defendant's authority under New York Labor Law § 816-b, and violates the civil rights of Plaintiff and those similarly situated.

For these reasons, Plaintiff asks this Court to: 1) Issue a Temporary Restraining Order precluding enforcement of the Ordinance; 2) Promptly schedule a hearing so that the Court can assess the arguments of both Plaintiff and Defendant; and 3) Declare the Ordinance invalid and therefore enjoin its enforcement; and 4) Award Plaintiff monetary damages in the amount proved at the hearing.

## BACKGROUND

The Plaintiff, Opal Construction, Corp. is an independently owned construction and paving company located at 209 South Fehr Way in Bay Shore, New York.  In the summer of 2017, Plaintiff was the successful bidder on a $3.695 million paving and construction project on Route 110 in Babylon.

After winning the bid, Plaintiff's work crews began to engage in some clearing of the site while waiting for the demolition permit from the Town that would allow further work to be completed.  While Plaintiff's work crews were engaged in clearing the site, Bob English of the New York State Laborers' Union, Local 66, approached representatives of Opal advising them

that they could not work on the project because Opal did not have an apprenticeship program that complies with Babylon's ordinance, § 89-13.1.

Shortly thereafter, when Opal representatives proceeded to attempt to obtain the requisite demolition permit for the remainder of the work on the project, the Town issued a stop work order, citing Opal's non-compliance with Babylon § 89-13.1 strictly due to its lack of a state-approved apprenticeship program.

Opal was paid $400,000 for full performance of the clearing work already completed prior to the issuance of the stop work order. However, due to the issuance of the stop work order, Opal was forced to assign the bid to another company and thus lost over $3 million of the $3,695,000 project. Further adding to Opal's continued damages, when the assignment was executed, a Change Order had resulted in the value of the project being increased to $4,181,195.

In order to avoid further losses as a result of being specifically prohibited from bidding on projects within the Town of Babylon, Opal has become affiliated with an apprenticeship program, Merit Apprenticeship Alliance, and has hired apprentices in the program. It cost Opal $10,000 to join the program; there is an annual fee of $7,000; and it costs $30 per hour to hire the apprentices. In order to maintain its membership in the program, Opal must hire apprentices for at least 200 hours per year, irrespective of whether they are needed.

## ARGUMENT

A. <u>Injunctive Relief is Appropriate Upon a Showing of Irreparable Harm and Likelihood of Success on the Merits</u>.

A court may issue a temporary restraining order or preliminary injunction when the plaintiff can show: "(1) irreparable harm absent the injunction and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tipping decidedly in Plaintiff's favor." *Young-*

*Flynn v. Wright*, 2007 WL 241332 at \*7 (S.D.N.Y. Jan. 26, 2007), citing *SmithKline Beecham Consumer Healthcare, LP v. Watson Pharm. Inc*., 211 F.3d 21, 24 (2d Cir. 2000).  "Whenever a request for preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief."  *Time Warner Cable of New York City v. Bloomberg, L.P*., 118 F.3d 917, 929 (2d Cir. 1997).

Plaintiff has suffered irreparable harm in the loss of a project worth over $4 million as a direct consequence of the Defendant enforcing this unconstitutional ordinance when the town issued a stop work order and forced the Plaintiff to assign the project to another contractor. Plaintiff is continuing to suffer monetary damages, as it has been forced to join the Merit Apprenticeship Alliance at a high cost in order to be able to bid on future projects in Babylon.

Plaintiff is also likely to succeed on the merits of its claims.  As set forth in greater detail below, it is plain that the Ordinance is preempted by both the NLRA and ERISA. Moreover, the plain language of N.Y.L.L. § 816-b expressly enjoins Defendant from enforcing this Ordinance to contracts such as Plaintiff's to which the Town is not a party.  Finally, as shown below, the Ordinance as applied is unconstitutional in that the Defendant lacks an adequate rational basis for applying it to contracts to which it is not a party and has applied it to deprive the Plaintiff of its right to pursue its lawful business without due process of law and in violation of the Equal Protection Clause of the Fourteenth Amendment.

The questions of federal law preemption and constitutionality of an ordinance are sufficiently serious questions to warrant injunctive relief, particularly because – as set forth above – the balance of hardships "tip[s] decidedly in Plaintiff's favor."  *Young-Flynn, supra,* 2007 WL 241332 at \*7; *see also Metropolitan Taxicab Bd. of Trade v. City of NY.,* 615 F.3d

152, 158 (2d Cir. 2010) (upholding grant of preliminary injunction in plaintiff's favor where plaintiff raised question of federal law preemption).

Plaintiff also has a strong likelihood of success with respect to its claim for monetary damages pursuant to 42 U.S.C. § 1983. Where, as here, a municipality seeks to enforce a preempted ordinance or statute under color of state law, a plaintiff is entitled to recover damages pursuant to § 1983 even if the Court rules in plaintiff's favor on grounds of preemption without reaching the plaintiff's § 1983 claims. *See Golden State Tr. Corp. v. City of Los Angeles,* 493 U.S. 103, 112-113 (1989) (finding that the City's withholding of a taxicab license until a taxicab franchise completed collective bargaining negotiations "violated petitioner's right to use permissible economic tactics to withstand the strike", and was preempted by the NLRA, but further holding that "[b]ecause the case does not come within any recognized exception from the broad remedial scope of § 1983," plaintiff was entitled to § 1983 damages in connection with the City's activity against plaintiff); *Livadas v. Bradshaw,* 512 U.S. 107, 133-134 (1994) ("Our conclusion that Livadas is entitled to seek redress under § 1983 is, if not controlled outright, at least heavily foreshadowed by our decision in *Golden State II."*).

B. The Ordinance is Plainly Preempted by the National Labor Relations Act and Cannot Be Lawfully Enforced.

The Supreme Court has made it clear that a state or locality cannot legislate in areas that are "protected zones" subject to the NLRA *unless* it is acting as a market participant rather than as a regulator:

> When we say that the NLRA pre-empts state law, we mean that the NLRA prevents a State from regulating within a protected zone, whether it be a zone protected and reserved for market freedom, … or for NLRB jurisdiction. A State does not regulate, however, simply by acting within one of these protected areas. When a State owns and manages property, for example, it must interact with private participants in the marketplace. In so doing, the State is not subject to pre-emption by the NLRA, because pre-emption doctrines apply only to state *regulation*.

*Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 226-227 (1993) (emphasis in original, citations omitted).  "Our decisions in this area support the distinction between government as regulator and government as proprietor."  *Id*.  Thus, the Court also ruled in *Wisconsin Dep't of Indus., Labor & Human Relations v. Gould Inc.*, 475 U.S. 282, 289 (1986), that a Wisconsin regulation precluding state agencies from contracting with companies who had been found in violation of the Act was preempted, because "by flatly prohibiting state purchases from repeat labor law violators Wisconsin 'simply is not functioning as a private purchaser of services;' for all practical purposes, Wisconsin's debarment scheme is tantamount to regulation."

In *Associated Builders and Contractors, Inc. v City of Jersey City, New Jersey*, 2017 WL 2616889, at *2 (D.N.J. June 15, 2017), *clarified on denial of reconsideration,* 2017 WL 5951582 (D.N.J. Nov. 29, 2017) *("Associated Builders"),* plaintiffs successfully challenged a Jersey City ordinance requiring contractors working on projects for which the City had provided a tax abatement to enter into a Project Labor Agreement, which in turn mandated that the contractor enter into a "me too" collective bargaining agreement with a particular union.  The court struck down the ordinance, holding:

> Mandating that tax abatement recipients enter into a PLA with certain required terms, such as a no strikes or lockouts provision, directly intrudes on § 7 and § 8 of the NLRA.  These sections of the NLRA "safeguard an employee's right to join, or refrain from joining, a labor union" and preempt "state and local laws that strip employers or employees of certain 'self-help' economic tools like strikes and lockouts."

*Associated Builders,* 2017 WL 2616889 at *2 (citations omitted).  *See also Van-Go Transp. Co. v. New York City Bd. of Educ.*, 53 F. Supp. 2d 278, 288-289 (E.D.N.Y. 1999) (finding unlawful the Board of Education's refusal to certify replacement workers for transportation of students when

the union members normally employed by the plaintiff decided to strike: "Thus, … BOE's policy severely curtailed, industry-wide, the ability of OPT contractors to hire strike replacement workers, a well-established, indeed, unquestioned, federal right. … In sum, there is powerful evidence that BOE acted not in a proprietary, but in its regulatory, capacity, and with the 'manifest purpose' and 'inevitable effect' of throwing its weight behind one of the parties to a labor-management dispute."); *Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cty.*, 431 F.3d 277, 278 (7th Cir. 2005) (upholding ordinance requiring companies ***that had contracts with the County*** to provide transportation for elderly and disabled residents to negotiate "labor peace agreements" with any union who wanted to organize their employees, but noting, "There is no doubt that if the County weren't a party to contracts with the employers who are affected by Chapter 31, the ordinance would be preempted by the National Labor Relations Act.  States and their subdivisions are not permitted to regulate activities that are either expressly permitted or forbidden by the Act or that are 'reserved [by the Act] for market freedom'.").

In the present case, Babylon is illegally enforcing the Ordinance regardless of whether the town is a party to the construction contract.  Babylon is enforcing the ordinance with respect to entirely private contracts, such as here, where the town's sole involvement is in issuing building permits.  This unlawful application effectively prohibits Plaintiff and those similarly situated from conducting business within the township exclusively based on whether the contractor has an approved apprenticeship program.  Thus, as a matter of law, the Ordinance is therefore plainly preempted.

C.  <u>The Ordinance Exceeds the Defendant's Authority Under New York State Law</u>.

The New York Labor Law § 816-b complies with the Supreme Court's admonition limiting the ability of state and local governments to legislate issues of this kind by expressly permitting

the requirement of apprenticeship programs only for contracts to which a city or municipality is signatory: "[I]n entering into any construction contract, a governmental entity **which is to be a direct or indirect party to such contract** may require that any contractors and subcontractors have, prior to entering into such contract, apprenticeship agreements appropriate for the type and scope of work to be performed, that have been registered with, and approved by, the commissioner pursuant to the requirements found in this article." N.Y.L.L. § 816-b.2 (emphasis added). The Ordinance plainly goes beyond the New York statute's bounds and is improper. In *Broidrick v. Lindsay*, 48 A.D.2d 639, 639-640, 368 N.Y.S.2d 212, 213-214 (1975), *aff'd*, 39 N.Y.2d 641, 350 N.E.2d 595 (1976), the Court of Appeals struck down the New York City mayor's imposition of requirements amounting to affirmative action standards that added to the requirements of NYLL § 815 prohibiting discrimination in apprenticeship programs. "There is a dramatic distinction between the expressed legislative policy of prohibiting employment discrimination and the mayoral policy of mandating employment 'percentages', however disavowed unpersuasively as being quotas." 39 N.Y.2d at 647, 350 N.E.2d at 598.

The legislative history of § 816-b makes it plain that its purpose was always to permit local governments to require contractors or subcontractors to participate in approved apprenticeship training programs *only* where they are themselves parties to the contract (emphasis added):

> **PURPOSE OR GENERAL IDEA OF BILL**: Authorizes **governmental parties to a construction contract** to require contractors and subcontractors to participate in approved apprenticeship training programs.
>
> …
>
> The section directs that a governmental entity which is a direct or indirect party to the construction contract **may require prior to entering into the contract**, apprenticeship agreements appropriate for the type and scope of the work to be performed, that have been registered with an approved by the Commissioner pursuant to article 23 of the labor law.

http://nyassembly.gov/leg/?default_fld=&leg_video=&bn=A08612&term=2001&Summary=Y&Actions=Y&Floor%26nbspVotes=Y&Memo=Y

Moreover, many of the governmental departments that approved or declined to oppose the bill did so precisely because the statute permissively allowed, but did not require, local governments to impose such requirements. *See* NYS Senate notes (attached hereto as **Exhibit A**). In short, the Ordinance overreaches the authority granted the Defendant by N.Y.L.L. § 816-b.

D.   The Ordinance is Also Preempted by ERISA.

The Employee Retirement Income Security Act ("ERISA") articulates a national policy concerning employee benefits.  Ordinances, regulations and activities that affect employee benefit plans, such as apprenticeship programs, are therefore preempted by ERISA. For example, the court that found the New Jersey PLA ordinance preempted by the NLRA found that it was likewise preempted by ERISA:

> This Court also notes that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," which includes "apprenticeship or other training programs."  29 U.S.C. § 1002(1), § 1144.  The PLA Ordinance, which outlines the operation and reporting requirements of the Apprenticeship Program... is therefore preempted by ERISA as well.

*Associated Builders, supra,* 2017 WL 2616889 at *2.  The Court in *Associated Builders and Contractors* v. *Perry,* 817 F. Supp. 49, 54 (E.D. Mich. 1992), applied the same analysis to reach the same result, holding, "Because the Court holds that Michigan's ratio and equivalency requirements are preempted by ERISA, the Court need not reach the issue of NLRA preemption."

Once again, the analysis set forth in *Associated Builders* and in *Perry* applies equally to this matter.  As a matter of law, deciding who must participate in an apprenticeship program relates to an employee benefit program.  Therefore, it is beyond cavil that the Code relates to an employee benefit program and is thus preempted by ERISA.

8

E. <u>The Application of the Ordinance to the Plaintiff Violates Its Civil Rights.</u>

**Due Process**.  "If [a] plaintiff was deprived of a 'property' or 'liberty' interest in an arbitrary or capricious manner or for arbitrary or capricious reasons, he has been denied due process." *Whitaker v. Bd of Higher Ed of City of N.Y.,* 461 F. Supp. 99, 103 (E.D.N.Y. 1978) (citing *Simard* v. *Bd of Educ.,* 473 F.2d 988 (2d Cir. 1973)); *see also Norton v. Town of Islip,* 239 F. Supp. 2d 264, 269 (E.D.N.Y. 2003) ("To establish a violation of his... due process rights, Plaintiff must show that (1) he possessed a protected property interest as defined by state law; (2) he was deprived of that interest under color of law; and (3) this deprivation occurred without due process of law.").  A "property" or "liberty" interest includes, for example, interests created by the terms of a collective bargaining agreement, *see Danese v. Knox*, 821 F. Supp. 185, 190 (S.D.N.Y. 1993) ("[C]ourts have uniformly held that a collective bargaining agreement  can  be the source of a  property  right entitled  to due process protection."), or interests and rights created by issuance of a building permit, *see Bain v. Town of Argyle,* 2006 WL 2516497, at *2 (N.D.N.Y. Aug. 28, 2006) (holding validly obtained building permit constituted a protected property interest as required to establish violation of right to due process).  Here, it is readily apparent Plaintiff has been so deprived, as Plaintiff lost a substantial contract due to the unlawful government intervention of the type imposed by the Ordinance.  This deprivation of Plaintiff's right to earn a living and to contract and bargain freely likewise constitutes a violation of Plaintiff's rights pursuant to the Privileges or Immunities Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

**Equal Protection**.  "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper

execution." *Sioux City Bridge Co. Dakota Cty.,* 260 U.S. 441, 445 (1923) (quoting *Sunday Lake Iron Co. v. Wakefield Tp.,* 247 U.S. 350, 352-353 (1918)).  A showing that Plaintiff is being "'intentionally treated differently from others similarly situated' with 'no rational basis for the difference in treatment'" suffices to show that its right to equal protection has been violated. *Bizzarro* v. *Miranda,* 394 F.3d 82, 88 (2d Cir. 2005) (quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).  Plaintiff has met this standard, as the transparent purpose of the Ordinance is to foster employment of certain contractors at the expense of Plaintiff and those similarly situated.

In order to survive this constitutional challenge to its Code, the Town must demonstrate the Code "is reasonable, nonarbitrary, and rationally related to some legitimate governmental interest." *Transcontrol Corp. v. Metro. Transp. Auth. of the State of N.Y.,* 1987 WL 12090, at *4 (S.D.N.Y. June 2, 1987).  This burden rests with the Defendant, rather than the Plaintiff.  *Id.* (citing *Alcala v. Burns,* 545 F.2d 1101 (8th Cir. 1986)).  The Defendant will be unable to meet this burden, for the same reason Plaintiff is likely to prevail in its claim of deprivation of the right to equal protection – namely, the Ordinance has been written and enforced in such a way as to prevent any contractor other than signatories to certain programs from being eligible to work on construction projects, thus preventing skilled construction contractors from plying their livelihood without any rational basis.  Regardless of the skill level of a contractor's workforce, and regardless of how many licensed master tradespeople a contractor may employ, in the absence of affiliation with a certain apprenticeship program, the Defendant's application of the Ordinance precludes the contractor's ability to work.  As shown above, the Ordinance goes much further than the New York Labor Law was intended to extend, and there is no legitimate government interest to which the apprenticeship program requirement can be said to be rationally related.

10

An ordinance such as this one, which is designed to promote one group or organization at the expense of others similarly situated, violates Plaintiff's constitutional rights and is therefore unenforceable.   *See, e.g., Olech, supra,* 528 U.S. 562, 565 (allegations that a municipality imposed "irrational and wholly arbitrary" demands upon a plaintiff which were not imposed on others similarly situated were "sufficient to state a claim for relief under traditional equal protection analysis.").

There is no rational relationship between the Ordinance's apprenticeship program requirements and any legitimate government interest, and the Defendant will not be able to prove otherwise.   Consequently, Plaintiff is entitled to injunctive and declaratory relief in their favor.

F. The Public Interest Favors a Temporary Restraining Order and Preliminary Injunction to Prevent the Enforcement of the Ordinance While the Court Considers Permanent Relief.

As noted above, a request for preliminary injunction that "implicates public interests" imposes on the Court the need to consider the balance of interests and the threatened irreparable injury to the plaintiff. *Time Warner Cable of New York City, supra,* 118 F.3d at 929.  Here, the public interest is significant.  Absent a TRO and/or preliminary injunction, the Defendant will continue to violate longstanding federal laws and to restrict the Plaintiff's Constitutional rights to equal protection and to due process.  Moreover, others similarly situated to the Plaintiff will likewise have their rights violated by the Defendant's unlawful actions.

Further, on this issue, this Court has previously issued immediate injunctive relief in the form of a Temporary Restraining Order, which has continued as a Preliminary Injunction, on facts strikingly similar to those herein, in a case in which another township's similar apprenticeship

requirement was challenged on constitutional grounds.  *See Hartcorn Plumbing and Heating Inc. v. Town of Oyster Bay*, 18 U.S. Dist. LEXIS 112736 (E.D.N.Y 2018)

The Court should therefore issue the preliminary injunction requested to preserve the *status quo* until the Court has had an opportunity to issue its ruling on the issues raised in the Plaintiffs' Complaint and Petition.  *Ligon v. City of New York,* 910 F. Supp. 2d 517, 519-520 (S.D.N.Y. 2012) ("The violation of a constitutional right, particularly on an ongoing basis, constitutes irreparable harm for the purpose of a preliminary injunction."); *Metropolitan Taxicab Bd. of Trade, supra,* 615 F.3d at 158 (preliminary injunction warranted where plaintiff demonstrated likelihood that the local ordinance under challenge was preempted by federal statute).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests: (i) entry of judgment declaring the Ordinance preempted by the National Labor Relations Act and the Employee Retirement Income Security Act; (ii) entry of judgment declaring the Ordinance to be in violation of the Equal Protection, Due Process, and Privileges or Immunities Clauses of the Fourteenth Amendment to the United States Constitution; (iii) entry of a permanent injunction forbidding future enforcement of the Ordinance against Plaintiff and all others similarly situated; (iv) an award of monetary damages pursuant to 42 U.S.C. § 1983; (v) an award of attorneys' fees, costs, and expenses to Plaintiff in this action  pursuant to 42 U.S.C. § 1988; and (vi) such other and further relief as this Court deems just, proper, and equitable.

Dated:  This 28th day of September, 2018.

STOKES WAGNER, ALC

By: /s/ Paul Wagner
Paul Wagner
Hayden Pace (permanent admission pending)
Anne-Marie Mizel (*pro hac vice* to be submitted)
903 Hanshaw Road
Ithaca, NY 14850
(607) 257-5165 (Telephone)
(607) 257-6293 (Facsimile)
pwagner@stokeswagner.com
hpace@stokeswagner.com
amizel@stokeswagner.com

Attorneys for the Plaintiff,
Opal Construction, Corp.

CHAPTER ___571___

LAWS OF _2001_ _____   MEMORANDUM NO. _____

SENATE BILL __5355-A___         ASSEMBLY BILL _____

_____          _____

_____          _____

5355--A

Cal. No. 1069

2001-2002 Regular Sessions

# IN SENATE

May 21, 2001

Introduced by Sens. SPANO, FUSCHILLO, LEIBELL, VELELLA, VOLKER -- read twice and ordered printed, and when printed to be committed to the Committee on Rules -- ordered to a third reading, amended and ordered reprinted, retaining its place in the order of third reading

AN ACT to amend the labor law, in relation to granting governmental entities the authority to require contractors and subcontractors on construction contracts to have approved apprenticeship agreements

A8612-A RULES (NOLAN)

DATE RECEIVED BY GOVERNOR:

___12|7___

ACTION MUST BE TAKEN BY:

___12|19___

**DATE** GOVERNOR'S ACTION TAKEN:

DEC 1 9 2001

SENATE VOTE _____ Y _____ N          HOME RULE MESSAGE _____ Y _____ N

DATE _____               BILL IS DISAPPROVED

ASSEMBLY VOTE _____ Y _____ N         DATE _____

DATE _____

COUNSEL TO THE GOVERNOR

000002

S 5355

TO:  COUNSEL TO THE GOVERNOR


Re:   SENATE *S 355*

ASSEMBLY


Inasmuch as this bill does not appear to relate to the functions of the Department of Law, I am not commenting thereon. However, if there is a particular aspect of the bill upon which you wish comment, please advise me.


**ELIOT SPITZER**
**ATTORNEY GENERAL**


Date: **July 24, 2001**


000003

B-203        **BUDGET REPORT ON BILLS**        **Session Year 2001**

**SENATE**        **NO  RECOMMENDATION**        **ASSEMBLY**
**No. S5355-A**        **Sen Spano et al.**        **No.**

**Title:  AN ACT to amend the labor law, in relation to granting governmental entities the authority to require contractors and subcontractors on construction contracts to have approved apprenticeship agreements**

      The above bill has been referred to the Division of the Budget for comment.  After careful review, we find that the bill has no appreciable effect on State finances or programs, and/or this office does not have the technical expertise to make a recommendation on the bill.

      We therefore make no recommendation.

**Date:  June 29, 2001**        **Unit Head:  Donald Capone**

*C ᴠᴘ*

**000004**

S 5355



H.CARL McCALL
STATE COMPTROLLER

A.E. SMITH STATE OFFICE BUILDING
ALBANY, NEW YORK 12236

STATE OF NEW YORK
**OFFICE OF THE STATE COMPTROLLER**

July 19, 2001

To:     James Maguire
        Counsel to the Governor

From:   Randolph F. Treece
        Counsel to the Comptroller

Re:     S. 5355-A

Recommendation:  No Objection

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Summary of Provisions:

This bill would add a new section 816-b to the Labor Law, authorizing
governmental entities, in relation to construction contracts, to require that contractors and
sub-contractors have, prior to entering into such contracts, appropriate apprenticeship
agreements that have been registered with, and approved by, the Commissioner of Labor.
"Governmental entity" is defined as the State, any State agency, as that term is defined in
State Finance Law §2-a, municipal corporation, commission appointed pursuant to law,
school district, district corporation, board of education, board of cooperative educational
services, soil conservation district, and public benefit corporation. "Construction
contract" is defined to mean any contract to which a governmental entity may be a "direct
or indirect" party which involves the design, construction, reconstruction, improvement,
rehabilitation, maintenance, repair, "furnishing, equipping of" or otherwise providing for
any building, facility or physical structure of any kind. The bill further
provides that, whenever utilizing this requirement, the governmental entity may, in
addition to whatever considerations are required by law, consider the degree to which
career opportunities in apprenticeship training programs approved by the Commissioner
may be provided.

Discussion:

With certain exceptions, General Municipal Law §103 requires political
subdivisions to award all purchase contracts in excess of $10,000 and all contracts for
public work in excess of $20,000 to the lowest responsible bidder furnishing the required
security after advertisement for sealed bids. The courts in New York have held that the

000005

competitive bidding laws have two central purposes, "both falling under the rubric of promoting the public interest": to guard against favoritism, improvidence, extravagance, fraud and corruption; and to foster honest competition in order that a political subdivision obtain the best goods and services at the lowest possible price (Associated General Contractors v NYS Thruway Authority, 88 NY2d 56, 68, 643 NYS2d 480, 484; Acme Bus v Board of Education, 91 NY2d 51, 666 NYS2d 996; Signacon Controls v Mulroy, 32 NYS2d 410, 345 NYS2d 527; Jered v NYCTA, 22 NY2d 187, 292 NYS2d 98; LeCesse v Town Board of the Town of Williamson, 62 AD2d 28, 403 NYS2d 950, affd 46 NY2d 960, 415 NYS2d 413).

In drafting bid specifications, municipalities have broad discretion to fix reasonable standards and requirements which bidders are obliged to observe. Based on the purposes of the competitive bidding statutes, however, the courts have struck down conditions or restrictions in bid specifications, or in ordinances or resolutions, which tend to limit the list of otherwise qualified bidders to achieve objectives not within the intendment of section 103. In this regard, the Court of Appeals struck down a local ordinance providing for a preference on certain public works contracts to favor contractors whose employees participated in State-approved apprenticeship programs, finding that apprentice training, while a desirable end, was not within the legislative intendment of, and impermissibly conflicted with, General Municipal Law §103 (Associated Builders and Contractors v City of Rochester, 67 NY2d 854, 501 NYS2d 653; see also 1982 Opns St Comp No. 82-128, p 158). The provisions of this bill, then, would expressly overcome the Court of Appeals' holding. Although this Office does not object to the enactment of, or the policy underlying, this bill, we have identified the following technical concerns.

Initially, as noted above, the term "construction contract" is defined to include contracts to which a governmental entity "may be a direct or indirect party ...". The bill does not define what an "indirect party" is, and the sponsor's memorandum in support does not explain the circumstances under which a governmental entity could be found to be an "indirect party." Absent clarification of this term, it is possible that the full intent of the bill might not be achieved, and that governmental entities could inadvertently fail to comply with its provisions.

In addition, "construction contract" is further defined to include any contract which involves the "furnishing [or], equipping of" any building, facility or physical structure of any kind. The stated intent of this bill is to allow governmental entities to require, as a condition of performing construction work, contractors and subcontractors to participate in certified apprenticeship training programs so that the State's work force will meet the increasing need for skilled trades persons. It is unclear to us that furnishing or equipping a building, facility or structure, by itself, either comes within the context of a traditional construction contract or is in the nature of work for which apprenticeship programs have been established. Nonetheless, it is possible, for example, that the bill could be interpreted to apply to contracts involving only the supplying of computer equipment, desks and chairs, or other office accoutrements, without any building construction work.

Although we do not object to the approval of this bill, we believe clarifications of the concerns raised in this memo would foster proper implementation in accordance with the sponsor's intent.

M:\legis2001\10-DayBillMemoranda\S5355-A.doc

A 5355
S.



### N E W
### Y O R K
### S T A T E

## S C H O O L   B O A R D S   A S S O C I A T I O N

SINCE 1896, THE VOICE OF PUBLIC SCHOOL LEADERSHIP

July 9, 2001

The Honorable James M. McGuire
Counsel to the Governor
Executive Chamber, The Capitol
Albany, New York 12224

**Re: A.5355-a**

Dear Mr. McGuire:

The New York State School Board Association has reviewed Assembly bill 5535-a and does not object to the intent or language of the legislation. As you know, this would grant school boards and other municipal governments the authority to prevent contractors or subcontractors from being awarded construction contracts if they do not have a state approved apprenticeship program.

Although the Association generally supports initiatives granting locally elected officials more authority over local matters, we are unaware of any board of education seeking this additional authority. It has been our experience that in most instances, taxpayer and community interests are best served when the competitive bidding process is open to the greatest number of responsible bidders without regard for union affiliation or the existence of state approved apprenticeship programs.

Because A.5355-a would be permissive if signed by Governor Pataki and some Boards of Education may choose this option if available, we do not oppose its enactment into law and would be comfortable with any decision that is made.

Very truly yours,

Timothy G. Kremer
Executive Director

**000008**

THE   DODGE   BUILDING
119 Washington Avenue, Albany, New York 12210-2292

Phone: 518-465-3474 ■ Fax: 518-465-3481 ■ E-mail: info@nyssba.org ■ Internet address: www.nyssba.org

S 5355

 **THE STATE EDUCATION DEPARTMENT** / THE UNIVERSITY OF THE STATE OF NEW YORK / ALBANY, NY 12234

Counsel and Deputy Commissioner for Legal Affairs
Tel. 518-474-6400
Fax 518-474-1940

June 26, 2001

**TO:**                          Counsel to the Governor

**FROM:**                      Kathy A. Ahearn *KAA by qksp*

**SUBJECT:**               S. 5355-A

**RECOMMENDATION:**    No objection

**REASON FOR RECOMMENDATION:**

This bill would add a new § 816-b to the Labor Law to authorize governmental entities, including but not limited to the State, school districts and boards of cooperative educational services, to require any contractor or subcontractor, as a condition for entering a construction contract, to have in place apprenticeship agreements appropriate to the type and scope of work to be performed that have been registered with and approved by the Commissioner of Labor. The bill would permit governmental entities to impose the requirement; it does not mandate that they do so.

S 5355

# Empire State Development

**Roger D. McDonough**
Deputy Commissioner and Counsel
Director of Intergovernmental Affairs

## TEN-DAY BILL MEMORANDUM

July 11, 2001

| | |
|---|---|
| TO: | JAMES M. McGUIRE |
| | COUNSEL TO THE GOVERNOR |
| FROM: | Roger D. McDonough |
| | Deputy Commissioner and Counsel and |
| | Director of Intergovernmental Affairs |
| SUBJECT: | S. 5355-A (Spano, Fuschillo, et al.) |
| POSITION: | No Recommendation |

The Department of Economic Development (the "Department") makes no recommendation on this bill. Upon review, the bill does not appear to directly impact upon the primary economic development objectives of the Department.

S 5355



**George E. Pataki**
GOVERNOR

**Amelia Foell Stern**
Counsel for Regulatory Reform

July 10, 2001

The Honorable James M. McGuire
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York 12224

Re: S. 5355 A
Recommendation: <u>No Comment</u>

Dear Mr. McGuire:

At your request, we have reviewed the above referenced bill. The bill would amend the Labor Law by adding a new section 816-b in relation to granting governmental entities the authority to require contractors and subcontractors on construction contracts to have approved apprenticeship agreements.

This bill does not impose this requirement on local governments, but allows the option. We agree with the intent of increasing training opportunities in the construction trades. However, it is important to note that this legislation may disproportionately affect small contractors and subcontractors who, because of their size, do not participate in apprenticeship programs.

Accordingly, the Office has no comment on this bill.

Very truly yours,

Amelia Stern
Counsel

cc: Brooks DeBow, Esq.

000011

S 5355



STATE OF NEW YORK
DEPARTMENT OF TRANSPORTATION
ALBANY, N.Y. 12232

JOSEPH H. BOARDMAN
COMMISSIONER

GEORGE E. PATAKI
GOVERNOR

July 31, 2001

Honorable James M. McGuire
Counsel to the Governor
Room 225
Executive Chamber
State Capitol
Albany, New York 12224

Re:   SENATE 5355-A
      TEN DAY BILL
      RECOMMENDATION: NO OBJECTION

Dear Mr. McGuire:

Thank you for providing us with the opportunity to review and comment on S. 5355-A, which would amend the Labor Law to authorize State agencies and other governmental entities to require its contractors or subcontractors to have apprenticeship agreements for the work performed.  Such apprenticeship agreements would be registered with the Department of Labor (DOL) and approved by DOL pursuant to Article 23 of the Labor Law.

If the Department of Transportation were to require DOL approved apprenticeship agreements for Federal-aid contracts, there may be a conflict between such a requirement and conditions for Federal-aid.  Since the bill would authorize the Department, in the Department's discretion, to require its contractors or subcontractors to have apprenticeship agreements, we do not anticipate that the subject bill would adversely impact operations of the Department of Transportation.  We have no objection to the bill being approved by the Governor.

Sincerely yours,

JAMES B. CANTWELL
Assistant Commissioner and
 Chief Counsel
Office of Legal Affairs

000012



STATE OF NEW YORK
DEPARTMENT OF CORRECTIONAL SERVICES
THE HARRIMAN STATE CAMPUS
1220 WASHINGTON AVENUE
ALBANY, N.Y. 12226-2050

S 5355

GLENN S. GOORD
COMMISSIONER

JOHN R. PATTERSON, JR.
EXECUTIVE DEPUTY COMMISSIONER

July 12, 2001

Honorable James M. McGuire
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York 12244

RE: S5355A

Dear Mr. McGuire:

With regard to the above referenced bill, S5355A, the Department of Correctional Services has no objection to this legislation. Please do not hesitate to contact me should you have any questions.

Very truly yours,

*John R. Patterson (ka)*

John R. Patterson, Jr.
Executive Deputy Commissioner

cc:  Glenn S. Goord, Commissioner
     T. Annucci, Dep. Comm. & Counsel
Enclosure



S 5355

GEORGE E. PATAKI
GOVERNOR

**New York State Office of
Science, Technology & Academic Research**

RUSSELL W. BESSETTE, M.D.
EXECUTIVE DIRECTOR

July 16, 2001

TO:        Honorable James M. McGuire
           Counsel to the Governor

FROM:      Megan Levine
           General Counsel

RE:        S.5355-A

POSITION:  No Objection

    This bill authorizes State Agencies, among others, to require, at their discretion, that construction contractors register apprenticeship agreements with the New York State Department of Labor prior to entering into construction contracts with the respective State Agency.

    As part of its mission NYSTAR provides funds for the construction of facilities, including, for example, laboratories and incubators, designed to foster advances in scientific research and technology which lead to economic development. Accordingly, certain NYSTAR contracts would be considered "construction contracts" under the proposed bill. NYSTAR does not object to having the discretion to require grant recipients to enter into apprenticeship agreements which would promote the expansion of a trained labor force in the construction trades.

cc:        Maryanne Gridley
           Jeff Lovell
           Chris O'Brien

**000014**



**STATE OF NEW YORK**
**DEPARTMENT OF LABOR**
Counsel's Office
Governor W. Averell Harriman State Office Building Campus
Albany, New York 12240

**GEORGE E. PATAKI**
Governor

**LINDA ANGELLO**
Commissioner

December 11, 2001

The Honorable James M. McGuire
Counsel to the Governor
The Capitol, Room 210
Albany, New York 12224

> Re: S.5355-a – An Act to amend the labor law, in relation to granting governmental entitles the authority to require contractors and subcontractors on construction contracts to have approved apprenticeship agreements

Dear Mr. McGuire:

The above-referenced legislation would amend the labor law to permit governmental entities involved in a construction contract to require any contractors and subcontractors to have apprenticeship agreements registered with and approved by the Department of Labor.

The Department of Labor supports this bill. Providing governmental entities with the option to require contractors to have registered apprenticeship programs with the Department on public work projects will help to increase the level of skilled labor in New York State while giving owners the flexibility to decide when such a requirement is appropriate. The Department looks forward to working with contractors and subcontractors interested in registering and operating high-quality apprenticeship training programs which will ultimately benefit our State's labor force.

Sincerely,

Jerome Tracy
Counsel

cc:     William Howard
        W. Brooks DeBow

**000015**
USCJAT@labor.state.ny.us

S 5355

**Albany Office**
30 South Pearl Street
10th Floor
Albany, NY 12207-3425
(518) 433-6700
(Fax) 433-6785

**White Plains Office**
123 Main Street
White Plains, NY 10601-3170
(914) 390-8000
(Fax) 390-8040


**New York Power Authority**

**David E. Blabey**
Executive Vice President,
Secretary and General Counsel
blabey.d@nypa.gov

**Carmine J. Clemente**
Deputy Secretary
and General Counsel
clemente.j@nypa.gov

July 12, 2001

**RECEIVED**

**JUL 2 0 2001**

**NEW YORK STATE
EXECUTIVE CHAMBER
COUNSEL**

Hon. James McGuire
Counsel to the Governor
State Capitol, Room 210
Executive Chamber
Albany, New York 12224

Subject:    S5355-a
A8612
An Act to amend the labor law, in relation to granting governmental entities the
authority to require contractors and subcontractors on construction contracts to
have apprenticeship agreements.

Dear Mr. McGuire:

This is in response to your request for comments on the above-referenced legislation that is now
pending before the Governor.

Summary of Provisions
The labor law would be amended by adding a new subsection 816-b that would allow a
governmental entity entering into any construction contract to require any contractors and
subcontractors to enter into apprenticeship agreements approved by the Department of Labor.

Discussion

The Power Authority appreciates that the proposed legislation is intended to clear any statutory
barriers for state contractors to be required to utilize Department of Labor approved
apprenticeship agreements.

While the Power Authority has no present plans to require such agreements, the available option
may be useful in the future to promote the objectives of effective labor training and improving the
labor pool.

The Power Authority has no objections to this bill.

Very truly yours,

David E. Blabey
Executive Vice President,
Secretary and General Counsel

cc:    J.Seymour
G.Zeltmann
J.Hamor

*The City University of New York*
*Office of the General Counsel and Vice Chancellor for Legal Affairs*
*535 East 80th Street, New York, N.Y. 10021*
*Phone: (212) 794-5382*
*Fax: (212) 794-5426*

*S 5355*

*Writer's direct phone: (212) 794-5759*
*Writer's e-mail: kmrbh@cunyvm.cuny.edu*

*Frederick P. Schaffer*
*General Counsel*

*Jane Sovern*
*Deputy General Counsel*

*Jane E. Davis*
*Marina B. Ho*
*Abby L. Jennis*
*Daphna H. Mitchell\**
*Linda Myles*
*Paul F. Occhiogrosso*
*Richard M. Plansky*
*Katherine Raymond*
*Susan Shanklin*
*Michael D. Solomon\**

*\*Associate General Counsel*

July 16, 2001

**M E M O R A N D U M**

To:        James M. McGuire
           Counsel to the Governor

From:      Katherine Raymond

Re:        S.5355-A  AN ACT to amend the labor law, in
           relation to granting governmental entities
           the authority to require contractors and
           subcontractors on construction contracts to
           have approved apprenticeship agreements.

Position: No position

_____

        The City University takes no position regarding the above
legislation.

H.A4861-KR WPD/kr
LOC#1070

**C00017**

# SAMPLE OF

# CORRESPONDENCE

# ONLY

000018



"Keeping you in comfort all year round"

The Honorable George Pataki
The Executive Chamber, State Capitol
Albany, NY   12224

Dear Governor Pataki:

As a worker in the merit construction industry, I am very worried about Senate bill
S.5355, which would require that all contractors have an approved apprenticeship
agreement to be eligible to bid for public works contracts.

I freely choose not to be a member of a union. This bill would give union workers an
unfair advantage to work on public works contracts and I hope you will veto
it.

If the company I work for can't compete for work, then I (and my family) will suffer the
consequences. Over 70% of the construction workforce in New York is non-union and it
seems unfair to set up a system that makes it more difficult to get work just because you
hire workers like me – people who choose not to join a union.  In fact, my choice to not
affiliate with a union would cost me the opportunity to work on projects funded by my
own tax dollars.

I know that you have been a strong supporter of open competition in the past.  Please veto
Senate bill S. 5355, and allow me and the company I work for to compete fairly for work.

My job could depend on it!

Sincerely,

000019

13 Airport Road   •   Scotia, New York 12302   •   Fax (518) 399-9183
Scotia (518) 399-9126      Albany 465-2664      Glens Falls 793-5816
Service (518) 399-9162      Hearth Div. (518) 399-7706



"Keeping you in comfort all year round"

The Honorable George Pataki
The Executive Chamber, State Capitol
Albany, NY   12224

Dear Governor Pataki:

As a worker in the merit construction industry, I am very worried about Senate bill
S.5355, which would require that all contractors have an approved apprenticeship
agreement to be eligible to bid for public works contracts.

I freely choose not to be a member of a union. This bill would give union workers an
unfair advantage to work on public works contracts and I hope you will veto
it.

If the company I work for can't compete for work, then I (and my family) will suffer the
consequences. Over 70% of the construction workforce in New York is non-union and it
seems unfair to set up a system that makes it more difficult to get work just because you
hire workers like me – people who choose not to join a union.  In fact, my choice to not
affiliate with a union would cost me the opportunity to work on projects funded by my
own tax dollars.

I know that you have been a strong supporter of open competition in the past.  Please veto
Senate bill S. 5355, and allow me and the company I work for to compete fairly for work.

My job could depend on it!

Sincerely,

000020



"Keeping you in comfort all year round"

The Honorable George Pataki
The Executive Chamber, State Capitol
Albany, NY  12224

Dear Governor Pataki:

As a worker in the merit construction industry, I am very worried about Senate bill S.5355, which would require that all contractors have an approved apprenticeship agreement to be eligible to bid for public works contracts.

I freely choose not to be a member of a union. This bill would give union workers an unfair advantage to work on public works contracts and I hope you will veto it.

If the company I work for can't compete for work, then I (and my family) will suffer the consequences. Over 70% of the construction workforce in New York is non-union and it seems unfair to set up a system that makes it more difficult to get work just because you hire workers like me – people who choose not to join a union.  In fact, my choice to not affiliate with a union would cost me the opportunity to work on projects funded by my own tax dollars.

I know that you have been a strong supporter of open competition in the past.  Please veto Senate bill S. 5355, and allow me and the company I work for to compete fairly for work.

My job could depend on it!

Sincerely,

Thomas D. Drake

General Manager

000021

13 Airport Road   •   Scotia, New York 12302   •   Fax (518) 399-9183
Scotia (518) 399-9126      Albany 465-2664      Glens Falls 793-5816
Service (518) 399-9162      Hearth Div. (518) 399-7706

# A & F Fire Protection Co., Inc.

**New Installations - Repairs - Monthly Inspections**
Certified Backflow Device Testers

28 E. Chestnut Street
Massapequa, N.Y. 11758
E-Mail Address: ANFFIRE @AOL.com

Telephone: (516) 541-4600
(718) 895-2811
Fax:   (516) 795-0075

July 27, 2001

The Honorable George Pataki
The Executive Chamber, State Capital
Albany, New York 12224

Dear Governor Pataki:

As a business owner with thirty-two employees, I support efforts at reviving the New York State economy. You have promised a business environment in which all of us can compete fairly and have campaigned in the past promising to advocate for making it easier to do business in New York by reducing government intrusion.

Unfortunately, legislation has passed both the State Senate and Assembly (S.5355/A.8162) attempting to legislate away competition and make it more difficult to do business in the state. As a contractor and member of the business community – I strongly oppose this bill and urge you to hold true to your promise and veto it.

This bill would allow governmental entities to require that contractors have approved apprenticeship agreements as a prerequisite for public works projects. This bill, if passed, will harm both union and non-union contractors. For instance, although my company is unionized (through an AFL-CIO union), our union currently does not have an apprenticeship program. Accordingly, we would not be able to bid on public works jobs in New York State. Further, this bill does not require that apprentices actually be trained, only that each and every contractor in the state who wishes to bid on public works projects has an approved Department of Labor apprenticeship agreement. Therefore, this bill would do nothing but add yet another layer of bureaucracy.

What this bill also will do is prevent thousands of companies – both union and non-union – from bidding on public works projects in New York State. The passage of this bil will result in higher construction costs to the government. These higher costs will ultimately be paid by the taxpayers of this state. Passage of this bill could lead to the loss of thousands of jobs and put many contractors out of business.

Again, I ask you to hold true to your promise to advocate for fair and open competition and veto this bill.

Sincerely,

Kenneth Fulep

000022

# American Paving & Excavating, Inc.

5880 Thompson Road
Clarence Center, New York 14032-9724
(716) 741-2649

July 30, 2001

The Honorable George Pataki
The Executive Chamber, State Capitol
Albany, NY 12224

Dear Governor Pataki:

As a business owner with 23 employees I support efforts at reviving the New York State economy. You have promised a business environment in which all of us can compete fairly and have campaigned in the past promising to advocate for making it easier to do business in New York by reducing government intrusion.

Unfortunately, legislation has passed both the State Senate and Assembly (S.5355/A.8162) attempting to legislate away competition and make it more difficult to do business in the state. As a merit contractor and member of the business community – I strongly oppose this bill and urge you to hold true to your promise and veto it.

This bill would allow governmental entities to require that contractors have approved apprenticeship agreements as a prerequisite for public works projects. While our industry supports training and workforce development initiatives, this bill does not require that apprentices actually be trained, only that each and every contractor in the state who wishes to bid on public works projects has an approved Department of Labor apprentice agreement. There is a blatant lack of due process in the current approval process for apprentice agreements within the Department, resulting in an overall bias against merit contractors. This bill would add yet another layer of bureaucracy and is nothing short of an attempt to give union labor an unfair advantage over merit contractors in the public bidding process.

Merit contractors comprise 70% of the construction industry in New York State, and excluding the majority of the industry from the bidding process will result in higher construction costs to the government. These higher costs will ultimately be paid by the taxpayers of this state. Passage of this bill could lead to the loss of thousands of jobs and put many merit contractors out of business.

Again, I ask you to hold true to your promise to advocate for fair and open competition and veto this bill.

Sincerely,

Guy R. Berberich
President

000023

55355 - A

*Joseph M. Brescia, CPA, P.C.*
*Accounting and Consulting*

*100 North Village Avenue, Suite 21*
*Rockville Centre, N.Y. 11570*
*Tel (516) 594-5665*
*Fax (516) 766-6921*

July 23, 2001

The Honorable George Pataki
The Executive Chamber, State Capitol
Albany, NY 12224

Dear Governor Pataki:

As a United States citizen I am proud of the freedoms that we are offered as Americans.
Freedoms which afford us the opportunity as individuals to grow and mature as persons
and as a people. These same freedoms are also granted to us in our pursuit of career and
business. As a professional and a business owner I am always interested in government
regulations which effect the way businesses and industries are operated.

The freedom of fair trade and competition is what help this nation become a World
leader. As a leader and someone who has always promised and campaigned for a
business environment in which all of us can compete fairly I hope you can understand my
concerns when I see something that could jeopardize this freedom.

As a professional who works in the construction industry I do not take sides as to union
and none union labor, however it does concern me as a business owner and an American
if a group is granted by legislation an unfair advantage in the public bidding process.

Two examples of legislation that I fear may jeopardize these freedoms are Project Labor
Agreements (PLAs), and the proposed apprenticeship bill (S.5355/A.8162). These bills
would give union contractors an unfair advantage to work on public works contracts.

For the Nation and for New York State I hope that you will not loose sight of the
importance of free trade and fair competition.

Sincerely,

Joseph M. Brescia

000024

# BURNS BROTHERS CONCRETE CONSTRUCTION CORP.

COMMERCIAL AND INDUSTRIAL CONTRACTORS

200 BROOKLEA DRIVE • P.O. BOX 8
FAYETTEVILLE, NEW YORK 13066
(315) 637-9631 • FAX: (315) 637-4626

**July 20, 2001**

The Honorable George Pataki
The Executive Chamber
State Capitol
Albany, NY 12224

Dear Governor Pataki:

As a worker in the merit construction industry, I am very worried about Senate bill S.5355, which would require that all contractors have an approved apprenticeship agreement to be eligible to bid for public works contracts.

I freely choose <u>not</u> to be a member of a union. This bill would give union workers an unfair advantage to work on public works contracts and I hope you will veto it.

If the company I work for can't compete for work, then I (and my family) will suffer the consequences. Over 70% of the construction workforce in New York State is non-union and it seems unfair to set up a system that makes it more difficult to get work, just because you hire workers like me – people who choose <u>not</u> to join a union. In fact, my choice to not affiliate with a union would cost me the opportunity to work on projects funded by my own tax dollars.

I know that you have been a strong supporter of open competition in the past. Please veto Senate bill S.5355, and allow me and the company I work for to compete fairly for work.

My job could depend on it!

Sincerely,

*Mark Thomas Sloan*

265 BElmont Ave.
OneidA N.Y. 13421

000025

$S 5355 - A$

# KiRST
## CONSTRUCTION INC.

7170 Boston State Road
P.O. Box 171
N. Boston, NY 14110
TEL: (716) 649-0906
FAX: (716) 649-0206

July 25, 2001

THE HONORABLE GEORGE PATAKI
The Executive Chamber, State Capitol
Albany, New York 12224

Dear Governor Pataki,

As a business owner with 29 employees I support efforts at reviving the New York State economy. You have promised a business environment in which all of us can compete fairly and have campaigned in the past promising to advocate for making it easier to do business in New York by reducing government intrusion.

Unfortunately, legislation has passed both the State Senate and Assembly (S.5355/A.8162) attempting to legislate away competition and make it more difficult to do business in the state. As a merit contractor and member of the business community – I strongly oppose this bill and urge you to hold true to your promise and veto it.

This bill would allow governmental entities to require that contractors have approved apprenticeship agreements as a prerequisite for public works projects. While our industry supports training and workforce development initiatives, this bill does not require that apprentices actually be trained, only that each and every contractor in the state who wishes to bid on public works projects has an approved Department of Labor apprentice agreement. There is a blatant lack of due process in the current approval process for apprentice agreements within the Department, resulting in an overall bias against merit contractors. This bill would add yet another layer of bureaucracy and is nothing short of an attempt to give union labor an unfair advantage over merit contractors in the public bidding process.

Merit contractors comprise 70% of the construction industry in New York State, and excluding the majority of the industry from the bidding process will result in higher construction costs to the government. These higher costs will ultimately be paid by the taxpayers of this state. Passage of this bill could lead to the loss of thousands of jobs and put many merit contractors out of business.

Again, I ask you to hold true to your promise to advocate for fair and open competition and veto this bill.

Sincerely,

KIRST CONSTRUCTION INC.

Kenneth Kirst
Vice President

KK/kb

000026

**General Contractor**

5 5355-A



American Building Contractors Associates, inc.
94E East Jefryn Blvd., Deer Park, NY 11729
Tel: 631.254.8242  Fax: 631.254.8244

July 23, 2001

Dear Governor Pataki:

As a business owner with fifteen employees, I support efforts at reviving the New York State economy.  You have promised a business environment in which all of us can compete fairly and have campaigned in the past promising to advocate for making it easier to do business in New York by reducing government intrusion.

Unfortunately, legislation has passed both the State Senate and Assembly (S.5355/A.8162) attempting to legislate away competition and make it more difficult to do business in the state.  As a merit contractor and member of the business community, I strongly oppose this bill and urge you to hold true to your promise and veto it.

This bill would allow governmental entities to require that contractors have approved apprenticeship agreements as a prerequisite for public works projects.  While our industry supports training and workforce development initiatives, this bill does not require that apprentices actually be trained, only that each and every contractor in the state who wishes to bid on public worlds projects has an approved Department of Labor apprentice agreement.  There is a blatant lack of due process in the current approval process for apprentice agreements within the Department, resulting in an overall bias against merit contractors.  This bill would add yet another layer of bureaucracy and is nothing short of an attempt to give union labor an unfair advantage over merit contractors in the public bidding process.

Merit contractors comprise 70% of the construction industry in New York State, and excluding the majority of the industry from the bidding process will result in higher construction costs to the government.  These higher costs will ultimately be paid by the taxpayers of this state.  Passage of this bill could lead to the loss of thousands of jobs and put many merit contractors out of business.

Again, I ask you to hold true to your promise to advocate for fair and open competition and veto this bill.

Sincerely,

Joseph Cole

000027



July 16, 2001

Hon. George E. Pataki
Governor of New York
Executive Chamber, State Capitol
Albany, NY, 12224

112 Hudson Avenue
Rochester, NY 14605
Phone: 716.454.4140
Fax: 716.454.4182

Re: S.5355A/A.8612A

Dear Governor Pataki,

The Greater Rochester Subcontractors Association, Inc. (GRSA) represents
over 50 construction subcontractors, specialty contractors and material
supply companies, both union and open shop, engaged in commercial,
industrial, institutional and public works construction projects in
northeastern New York.

I am writing to express this association's strong opposition to the above
referenced bill, which would allow state agencies and municipalities to
impose a bidding requirement that contractors and their subcontractors
shall participate in apprenticeship programs approved by the Department of
Labor.

Historically, the Department of Labor has been reluctant to approve new
apprenticeship program applications where an existing apprenticeship
program is in place in a given locality. Further, the standards and
procedures established by the Department of Labor for the approval and
registration of apprenticeship programs are modeled after, and heavily
skewed in favor of, the traditional union programs. From a practical
standpoint, it has been nearly impossible for open shop contractors to
receive approval on their apprenticeship program applications. Therefore,
this bill would merely serve to block otherwise qualified and competitive
open shop contractors and subcontractors from bidding work led by public
authorities.

In addition, the mere fact that a contractor or subcontractor "participates"
in an approved apprenticeship program does not necessarily indicate that
program is even currently active in training apprentices. There are a
number of existing union apprenticeship programs around the State, which
are totally inactive at the present time.

While GRSA advocates apprenticeship training, mandating approved
apprenticeship-training programs under the current, and very restrictive,
DOL approval and registration process is ill advised, and will simply lead



to a reduction of qualified bidders and high construction prices for New
York public authorities.

We do not believe that it is your intent to cause a substantial increase in the
cost of public works construction, nor do we believe you wish to preclude
the majority of New York State contractors and subcontractors from
participating in public works projects. That is precisely the impact that the
bill would have. Indeed, this bill could well put many businesses, which
have a concentration on the public works market out of business.

112 Hudson Avenue
Rochester, NY 14605
Phone: 716.454.4140
Fax: 716.454.4182

For minority contractors, this bill looms even more onerous since the vast
majority of minority contractors and subcontractors in the state of New
York are nonunion. Nothing we can think of will set back the participation
of minority contractors in the public works market more than this bill will:

Last year, a similar bill that would have authorized public authorities to
require apprenticeship programs was sent to you and you rightfully vetoed
it (veto #72). Quite honestly, this year's version is far worse because it
authorizes virtually all public owners to require apprenticeship programs.
The members of this association have long supported you and your efforts
to make New York a more "business friendly" state. This bill is the very
antithesis of business friendly, and we now look to you for your help, your
leadership and your veto.

We urge you to do the right thing and veto this bill.

Sincerely,

William W. Farmer, Jr.
**Greater Rochester Subcontractors Association**
President, Wilson Restoration and Waterproofing

WWF/awr

000029

# Crisafulli Bros.

**Plumbing & Heating Contractors, Inc.**

*S. 5355-A*

■ Plumbing • Heating • Air Conditioning
■ Sales and Service
■ Residential and Commercial

June 25, 2001

Honorable George E. Pataki
Governor of New York
Executive Chamber, State Capital
Albany, N.Y. 12224

### Re: VETO REQUEST FOR LEGISLATURE BILL (S5355A\A8612A)

Dear Governor Pataki:

We are writing to express our strong concerns and to ask for your **VETO** in the matter of the Legislature Bill (S5355A\A8612A) that has been presented to your office for signing.

CRISAFULLI BROS. PLBG & HTG, INC. is a long-standing, reputable construction organization that has been serving the Capital District region and its sister counties for over 60 years. Our experience includes both Public Works projects as well as serving the community on private residential and commercial construction projects. We feel it is imperative, therefore, to address the issues as they may relate to the business environment in our area and that of the State of New York.

We have great concerns as to the above Legislature Bill as it has been presented to your office for signing. The Bill presents requirements for ALL Contractors and Subcontractors on Public Works Projects to have an approved Apprenticeship program (by the NYS Dept. of Labor), **or** the Contractors and Subcontractors would be precluded from working on Public Works Projects. This requirement will present a great hardship to organizations with 3, 4 or up to 10 employees, who may decide that the requirements, red tape and paperwork of bidding on public works projects may not be a beneficial to their companies. As an organization that has gone through the *difficult* procedures to obtain a qualified Apprenticeship program through the New York State Dept. of Labor, we well know the obstacles and roadblocks that await other organizations trying to procure the same.

As a Prime Contractor, we know the benefits of being able to subcontract to small independent open-shop organizations who can produce economically and with the most efficiency and productivity. In this, New York State is able to gain the low cost, quality construction that it is trying to assure. Legislating restrictive laws on organizations and corporations would only prove non-beneficial to the economic climate in our state and not provide the end result that the leadership of New York Sate should be looking for.

We ask again that you **VETO** the above Legislative Bill, which we feel, would reverse with great steps, the advancements that you have previously made to the economic environment of our State.

Respectfully Yours,
The Management Team of
CRISAFULLI BROS. PLBG & HTG, INC.

Carmelo Crisafulli
C.E.O.

Joseph Crisafulli
President

Andrea (Crisafulli) Russo
Secretary/Treasurer

000030

*S.5355-A*

# Duggan & Duggan

— GENERAL CONTRACTOR, INC. —
COMMERCIAL — INDUSTRIAL
85 W. Main Street ● P.O. Box 5 ● Allegany, NY 14706-0005

PH (716) 373-1033

FAX (716) 373-1122

June 25, 2001

The Honorable George E. Pataki
Executive Chamber, State Capitol
Albany, NY 12224

Dear Governor Pataki:

I am writing you to express my strong opposition to Bill 5355-A. The legislation allows all public agencies (State, County, Municipalities, and School Districts) the authority to require that all contractors and subcontractors have D.O.L. Apprenticeship programs in place prior to contract award of public projects.

Respectfully submitted,

DUGGAN & DUGGAN GENERAL CONTRACTOR INC.

Mel J. Duggan
President

MJD/avc

000031

# Greater Capital Region Minority Business Association

251 North Pearl Street
Albany, New York 12207

S 5355

June 21, 2001

Honorable George Pataki
Governor of New York State
State Capitol - Executive Chamber
Albany, New York  12242

Reference:    S.5355A
              A.8612A

Dear Governor Pataki:

We are writing on behalf of 40+ minority contractors who are affiliated with this organization.

Minority Businesses and people are cognizant of the efforts you and the Republican Party are making to reach out to our ranks. We would like to think you are sincere in your efforts.

We urge you to not sign the above referenced bills into law because they will effectively terminate minority business participation on Public Works projects. Minority contractors are going to be powerless to participate in public works projects as the new mandate to deal with the New York State Department of Labor for the approval of apprenticeship plans will create yet another barrier. Availability of union like apprenticeship programs in the Capital Region is non-existent except for unions. Traditionally, minorities have been excluded from the union ranks.

Politically speaking, if the bill is signed, it will alienate most of the minority contractors along with the construction business community.

On the one hand you try to outreach to minorities and on the other hand you will kill us if you sign the bill.

On the one hand your past record has been pro-business and that got you elected. On the other hand if you sign the bill, it will deprive the vast majority of construction firms from bidding on public works projects.

On the one hand you advocate simplicity in dealing with State bureaucracies and advocate paperwork reduction reform. On the other hand if you sign this bill you will create volumes of unnecessary paperwork with the New York State Department of Labor registration and approval.

Page 1 of 2

# Greater Capital Region Minority Business Association

251 North Pearl Street
Albany, New York 12207

Honorable George Pataki
Governor of New York State
Re: S.5355a and A.8612A
June 21, 2001
Page 2 of 2

      Business has always been a friend of Pataki. It will be politically naïve to expect the other side to break long standing ties with the Democrats in next year's election. Several other construction and business groups are also concerned.

      Governor, we urge you to **veto this bill.**

For the Board of Directors

Joseph A. Gomez
Chairman

Cc:     Jeffrey Zogg, General Building Contractors of New York State Inc.
        Michael Misenhimer, Northeastern Subcontractors Association
        James McGuire, Esq.
        Jeffrey Thomas, Associated Builders and Contractors Inc.
        Lennox Britton, New York State Chapter of The National Association of Minority
                Contractors Inc.
        Patrick McCarthy
        Senator Joseph Bruno
        Senator Dean Skelos
        Assemblyman John Faso
        Assemblyman Robert Prentiss
        Assemblyman Jim Tedisco
        Assemblyman Pat Casale

$S5355$

## *Associated Construction Inc.*

1335 Albany Street, Schenectady, New York 12304
Tel. (518) 374-5661   Fax: (518) 346-4250

June 29, 2001

Hon. George E. Pataki
Governor of New York
Executive Chamber , State Capital
Albany, NY  12224                              Re: S.5355A/A.8612A

Dear Governor Pataki:

As President of the company, I strongly urge you to veto the above named bill, which
would require contractors and their subcontractors to participate in Apprenticeship
programs approved by the Department of Labor.

As a Woman Owned Business, we fully realize the handicap that such a mandate would
place on us. It is nearly impossible for a minority non-union shop to have an
Apprenticeship program approved. We are an open shop and this bill would severely
block our ability to bid public works.

Signing this bill would increase costs of public works construction. It would keep a great
number of contractors and subcontractors from being eligible to bid these contracts.
Small contractors and minority contractors would be put out of business.

Show your support of New York's contractors and subcontractors and

### **VETO THIS BILL**        **S.5355A/S.8612A**

Yours truly,

Dawn DiLella.
President

# MID-ORANGE MECHANICAL CORPORATION

P.O. BOX 479
NEW HAMPTON, NEW YORK 10958
**(845) 343-7926**
FAX 343-7496

State of New York
Governor George Pataki
Governor's Office
State Capitol
Albany, New York  12224

## Re: Senate Bill # SO5355A

Dear Governor Pataki,

The Senate and Assembly recently approved the above noted bill.  It is now on its way to you for your signature.

## <u>PLEASE DO NOT SIGN THIS LEGISLATION INTO LAW !!!!</u>

As a small, open shop, mechanical contractor this legislation is a real determent to our ability to stay in business. This bill is so PRO Union and it only diminishes the non-union or open shop contractors. We have no readily available, recognized apprenticeship training program. Non is offered by the State.  The only approved training programs are either Associated Builders & Contractors (ABC) or the local unions themselves.  We cannot avail ourselves to the union schools since we are not signatory to any organized labor unions and the ABC does not offer any schools in Orange County. So here I am, possibly being required by a future law, to provide an APPROVED apprenticeship training program, and for what reason?  The only reason I can see is so that the unions can again squeeze out their competition.  The Unions have very deep pockets when it comes to political ambition. We on the other hand are only a handful ( but with plenty of votes ) of similarly challenged contractors who have no $ clout, just a sincere desire to be able to run our business as we see fit and not overshadowed by union interests.

If this bill is signed by you, it will most assuredly stop small firms from submitting competitive bids on public works projects.  If you do not sign this bill, the State and hence the taxpayers are the ultimate winners with lower priced construction projects.  As you are aware, there is a current shortage of craftspeople ( union and Non-union ) to do the construction work in New York State. The passage of this bill would make matters even worse. Then only union firms could bid. With the lessening of competition I envision the going prices for construction work to be increasing.

Sincerely,

William E. Hadden

Phone 845-343-7926
Fax   845-343-7496
e-mail  MOMCORP@warwick.net

000035

*c:\mw\md\momomoffice\apprenticeshiptraining.doc*

06/22/01   15:37   INDUSTRIAL WELDING → 518 474 1513                    NO.748   P01

# **D**iversified
# **E**rection
# **S**ervices **Inc.**

121 JACKSON AVE., W.E.
JAMESTOWN, NY  14701
PHONE:  716-483-3750
FAX:  716-664-2501

June 22, 2001

**TO:**  Governor George Pataki

**FROM:** Fred Santucci , working partner, Corporate Treasurer

**Please <u>DO NOT SIGN</u>  Assembly Bill 5355-A!!!!**

We are a small steel erection business that has been in business
in New York State since 1992.  We generally keep 8 men full time
throughout the year and add 6 to eight during the heaviest
construction season.

We do not have a D.O.L. Apprenticeship program.  A requirement to
have one will virtually eliminate us from bidding any kind of
public project.

Because we are so small the majority of the workers that we hire
must be experienced ironworkers.  When we hire less skilled
workers, they are fit into the crew as helpers and ground men.

We have an excellent Workers Compensation Insurance Board Rating
of .89 which gives us an 11% credit for safe work practices.

In addition, we offer our employees health insurance and a profit
sharing retirement plan, paid vacations, and a competetive wage.

**It seems that this is another move by the state to eliminate
competetive bidding in favor of labor unions.**

Our workers do not have to pay union dues and are given the
benefits as listed above along with a safe work environment and
competetive wages.

How does the state plan to have the Department of Labor get all
of these new apprenticeship programs operational among the scores
of non-union contractors and sub-contractors in the state ?  What
happens to the fabricator who fabricates the steel we erect?
They too are non-union.  If they don't get the jobs , we don't!!
That will put 17 more people out of a job!

Please consider this information before signing any bill that
limits the ablity of non-union contractors to do business in this
state!!!

# Crisafulli Bros.

**Plumbing & Heating Contractors, Inc.**

■ Plumbing • Heating • Air Conditioning
■ Sales and Service
■ Residential and Commercial

## FAX COVER SHEET

DATE:                 06/22/01

TO:                   HONORABLE GEO. E. PATAKI

COMPANY:              GOVERNOR OF STATE OF NEW YORK

FAX NUMBER:           474-1513

FROM:     EMPLOYEES OF CRISAFULLI BROS. PLBG & HTG, Inc.

   This letter is to respectfully request that you issue a **VETO** to the just passed **Legislature Bill (S5355A/A8612A)** which would require that all public works projects demand that Contractors and Subcontractors have apprenticeship programs registered with the State Dept. of Labor.

   Based on the difficulty with obtaining a qualified apprenticeship program with NYS Dept of Labor, we feel that this requirement would present an undue hardship on all non-union, open shop contractors and subcontractors.

   This bill is clearly not in the interest of the economic growth of businesses within the State of New York.

### PLEASE VOTE WITH THE BUSINESS COMMUNITY BY VETOING THE ABOVE NOTED LEGISLATURE BILL.

SIGNED

000037

520 Livingston Avenue, Albany, New York 12206

Telephone: (518) 449-1782 ■ Fax: (518) 449-1014 ■ E-mail: crisbro@aol.com

*Serving Our Customers since 1939*



Closet Crafters/Albany Shower Door
25 Kraft Avenue, Albany, NY 12205
518-459-0037  Fax 518-459-0038



Hon. George E. Pataki
Governor of New York
Executive Chamber, State Capitol
Albany, New York, 12224

June 22, 2001

Re:     S.5355A/A8612A

Dear Governor Pataki:

I am appalled to hear once again that the leaders of this State have passed the above-mentioned bill requiring apprenticeship-training programs. New York already stands out as one of the most difficult states to do business in and this bill is just another example of backwards leadership!

The Department of Labor does not even support apprenticeship programs unless they are usually though a union shop. How then can our leaders pass a bill that a State Department makes impossible to follow for non-union shops? **Did anyone think to require DOL support of this bill?**

Please VETO this bill as it stands, because it will have a major impact on smaller businesses and their ability to stay competitive in this kind of environment.

Sincerely,

Thomas R. Barber
Executive Vice-President

*A Family Owned and Operated Business Since 1987*

www.closet-crafters.com     E-Mail: sales@closet-crafters.com          www.alb-showerdoor.com   E-Mail: sales@alb.showerdoor.com

000038